Thank you, Your Honor. May it please the Court, I'm Loren Collins, representing the State of Oregon, and I'm joined at the Council Table by Mark Abrams, also from the Oregon Department of Justice. I'd like to reserve five minutes for rebuttal, and I'd like to focus on two questions, the class of one theory of equal protection and qualified immunity. The issue before this Court is whether to make every public employment decision subject to federal court review by applying the class of one theory of equal protection to these type of public employment cases. This would constitutionalize every public sector Adverse Employment Act, and certainly there is no indication that the Supreme Court intended such a broad result in Village of Willowbrook v. Olin. Has any circuit refused to apply the class of one rule to public employment? No, Your Honor. There have been some. A number have done so. Excuse me? A number have applied it. There are some circuits that have applied the class of one theory in the public employment setting, Your Honor. We would make two or three points about those cases, Your Honor. First of all, in those cases, to the extent that we have analyzed them, those cases did not analyze whether the class of one theory of equal protection should, in fact, be applied in the public employment sector. There is a separate line of cases where the Supreme Court... Didn't Judge Closet talk about that in his decision? Well, in a couple recent decisions, including the Louth case, Judge Posner has been critical of the class of one theory of equal protection. But he did apply it. He did apply it, Your Honor. That's right, based upon prior precedent in that circuit. I'm not talking about the issue of how narrowly it's applied or how effective it is, but I'm saying the class of one rule does not apply at all in public employment, and that would cause us to part company with a number of other circuits. It would, quite frankly, cause the Ninth Circuit to part company with some circuit. But I would hasten to point out to Judge Reinhart that those circuits have not analyzed whether the class of one theory of equal protection should be applied. They have assumed that it should be applied, and there is a body of jurisprudence where the Supreme Court, in cases such as the Waters case, and even more recently in the Garcetti case, have said that when there is a difference between the government as sovereign and the government as employer, there is a significant deference that has been given to the government in its role as an employer. Also, there is a line of jurisprudence, some of which is in the substantive due process that states that where a fundamental suspect class is not involved, the federal government, the federal courts, do not get involved in matters of public employment of this nature, where there is no suspect class or fundamental rights involved. The point that I would make about the circuits that have applied the class of one theory of equal protection in the public employment sector is this, that they have assumed that it applied without reconciling that other line of jurisprudence that gives deference to the government as an employer. Secondly, in those cases where the Second Circuit, for example, the Fifth, Seventh, and Eighth Circuits have applied the class of one theory of equal protection in the public employment sector, they have involved termination-type cases. And the type of issues that are involved in this case, in the Inchrist case, are the type of cases that highlight why it is dangerous to apply the class of one theory of equal protection. We didn't, in this case, involve a promotion and a layoff and then the exercise of bumping rights. Those are very significantly different from the regulatory type of issues that Village of Willowbrook involved or that this Court's Squaw Valley involved. In those type of issues, employment issues, layoffs for economic reasons or promotions, the employer, the public employer, is necessarily involving, is necessarily making distinctions between employers. And while sometimes those distinctions will be based upon very objective standards, what are the educational level of the two people that are applying for this job, or what is the quantity of work that this person has done, who should be laid off based upon these quantitative or qualitative factors, we all know that in the public employment sector, in the individual employment arena where you are deciding who should be subject to a layoff or who should get the promotion, sometimes they necessarily involve very subtle and perhaps subjective distinctions. Which employee is going to be a better fit? Which employee shows the most maturity of judgment? And those situations, those individual employment situations, are ones in which the classic one theory of equal protection should not be applied because it conflicts with this, with the Court's other line of jurisprudence. The other line of jurisprudence that holds that where fundamental suspect rights are not involved, they're not subject to federal court scrutiny. And that the government as employer must be given more latitude than the government as sovereign. Couldn't you achieve that same result by applying, I'll say, the more limited classic one definition of loath? That's right, Your Honor. And in the loath case, Judge Posner suggested that we should return, in essence, to a more historical basis of equal protection, if I understand your analysis, which is this, that, for example, pretext analysis should not be applied. And the question should be this. The question should be, could the public, the government, could the government have had a rational basis for its decision, not whether it did, in fact, have a rational basis? So, Judge Kishima, you're quite correct that if the Court decides to apply the classic one theory of equal protection in the public employment sector, then it should at least not apply the pretext analysis. That instead, it should determine whether the government could have had an imaginable basis, rational basis for its decision, not whether, in fact, the government did have that. All right. Now, let's just call that the rational basis test. But under the rational basis test, you think you would still be entitled to reversal? We do, Your Honor, because under the rational basis test, the government, certainly, the state government in this case, certainly articulated a rational basis for the decisions that it made in this case. And so, for that reason, it certainly should be entitled to reversal. If I could go forward, Judge Kishima, there are two reasons why we should have reversal in this case, beyond the general issue of applying the classic one theory of equal protection, generally. And those two reasons are this. First of all, the plaintiff failed to identify other individuals that were similarly situated with the plaintiff. And secondly, the issue of qualified immunity. Dealing first with the issue of similarly situated individuals, the state, prior to trial, filed a motion in limine and asked the court to exclude the classic one theory of equal protection unless and until the plaintiff identified similarly situated individuals. That motion was granted, requiring the plaintiff to identify individuals that were similarly situated. But at no time did the plaintiff do this. Instead, what the plaintiff did was, in the language of this court, conflated the analysis. The plaintiff said, I was subject to animus. Therefore, I was treated differently from everybody else. But keep in mind that there were three specific adverse employment actions that the plaintiff was suing the State of Oregon about and the individual defendant. Those were the failure to promote, the layoff, and the exercise of dumping rights. At no time did the plaintiff articulate those individuals with respect to whom she was similarly situated and treated differently with respect to any of those three adverse employment actions. With respect to the promotion, there were certainly distinctions between her and the plaintiff who got the promotion that were articulated at trial, and one other person was also tasked with the promotion. With respect to the layoff, the plaintiff was the first of ten people over the next ten years that was laid off. At no time did the plaintiff articulate those individuals with respect to whom she was similarly situated but treated differently with respect to those adverse employment actions that she was concerned about. And then finally, beyond all of this, we have the issue of qualified immunity. And let's look at what the landscape of the law was in the year 2001. We had a village of lawyers. Let me just go back to your last point before qualified immunity. If a group of ten people walk off the job and go to a baseball game in the afternoon and one is singled out and fired, that would meet your test, right? That would certainly be one test, Your Honor. Now, if ten people do nothing at all and one is singled out, you can't meet the test. Your Honor, our argument is that if the plaintiff is suing about specific adverse employment actions, the plaintiff is required by this Court's case law to focus on those adverse employment actions in order to show how she was separately situated. Well, that's what I'm saying. I'm trying to see how this comparator doctrine works in this public employment area. And I see easily, as I say, when ten people engage in a bad act and one is treated differently, it's easy to see what your doctrine leads to. On the other hand, I say if the same group of ten do nothing at all and employee number three says, look, all of us did nothing. Nobody did anything, but they picked on me in a totally arbitrary manner and deprived me of the same privileges that everyone else. They singled me out for the layoff, although I didn't do anything. Or they failed to promote me or they did something because, not because a whole group of us acted the same way, affirmatively, but none of us did anything. Does the doctrine apply to that circumstance? Judge Reinhart, what you've described is exactly why the class of one theory of equal protection should not be applied in the individual employment situation. Except that it is in other courts. And I'm assuming that we're going to say, yes, the doctrine does apply. And if we said that, your argument is that, even if it applies, they don't have the comparator as yet. They don't, Your Honor. But what you have just described is the reason why the class of one theory should not be applied in the individual employment situation. And if I can just take a moment to contrast this with the regulatory setting. In a regulatory setting, we have a tapestry of laws and regulations with prior applications of licensing or other regulatory actions. And the class of one theory makes some sense in that setting, that you can compare how was this prospective licensee treated vis-a-vis all of these other prior applications. But the scenario that Your Honor just described is more akin to the individual employment setting. And that is why that it is to be contrasted very significantly with the regulatory setting that is more appropriate to the class of one doctrine. That's what Village of Willowbrook was. That's what Squaw Valley was. But where you have the individual employment situation, it is, by nature, more difficult to determine how was this individual treated differently from other similarly situated individuals. But that's not a reason to abandon that requirement of the class of one doctrine. That is a reason why the class of one doctrine should not be applied in the public employment setting. And if I could just take a couple of minutes, if I can reserve five minutes, on the qualified immunity issue. If you take a couple of minutes, you're not going to have five minutes to reserve. But take a couple of minutes and we'll work something out. Thank you, Your Honor. On the qualified immunity issue, the law was not clearly established in the year 2001. Village of Willowbrook was announced in 2000. Other cases and other circuits simply assumed that it applied. No Supreme Court case applied the class of one theory in the employment setting then or now. No Ninth Circuit case applied the class of one theory in the employment setting then or now. There is a split among the two. How did you raise this issue with the district court? Your Honor, we filed a motion for summary judgment that was denied prior to trial. We then filed a motion in Lemony. All right. The basis of the denial was what, if it was articulated? The Judge Ashmanskas wrote a letter of opinion, Your Honor, in which he did not go along with the Cain v. Tigard-Fulton School District, which was a decision by Judge Haggerty in the Oregon district that did not apply it in the public employment sector. He followed other cases and other circuits that did apply it in the public employment setting, Your Honor. Recently, I would just hasten to add that two circuits that have applied it previously, the Seventh and the Tenth, have questioned it. The most recent was the Jennings v. City of Stillwater in the Tenth, which was not an employment case per se, but talked about that in the wake of Olyp, the lower courts have struggled to define the contours of class of one. In the Seventh Circuit, Judge Posner stated, We are still struggling to circumscribe this amorphous cause of action. That is language that is not a clearly settled law. If nothing else, this law was not clearly settled, and the plaintiffs and the defendants are entitled to qualified immunity. Thank you. Good morning, Your Honor. Steve Bruschetto for the Plaintiff. I'd like to spend some time talking about the class of one issues and the qualified immunity issues. I'd also like to spend some time talking about the cross appeal, and I'd finally like to Your Honors, with respect to the class of one issues, there is no proper Fourteenth Amendment analysis which would suggest that the class of one does not apply to employment cases. Counsel, do you think that the Supreme Court in Willowbrook intended essentially to do away with the concept of employment at will in a substantive sense in respect to government employment? No, I don't think that they did at all. I don't think that they... Isn't that the effect of your theory? I mean, posit the following, which is about as arbitrary as anything you can do. The employer says, you know, instead of doing any other kind of layoff, I'm just going to stand at the front door, and I'm going to fire every third person in the order they do, and that'll get my workforce down. Completely arbitrary. But there's no contract or other... And there's no discriminatory animus based on race or gender or anything like that. Is that what the Supreme... And let's say that only four people come to work, so they end up only firing one. Is that what the Court had in mind? I don't think necessarily that that would be a proper application of the class of one. It would depend upon the facts and circumstances. Certainly, an arbitrary decision that an individual should be fired where there is no rational basis for the arbitrary decision, and the arbitrary decision is different treatment of to a claim. However, there can be a rational basis for deciding that we need to terminate the third people and third person, and this is the best way to do it. For example, there may be a very well thought out plan that is based upon we don't have enough money, and what's the fairest way to do this? Rational basis. You're weaseling out of my hypothetical in the sense that I'm positing that it's completely irrational. It's just purely arbitrary. It's like maybe their cousin thought it up the night before dinner. Is that really what this doctrine is for? I'll try and be more direct. A completely arbitrary decision to terminate every third employee, I think a claim could be based on that. I do. Maybe we shouldn't get too deeply into Judge Kramer's question, but if you do have to lay off a third of the employees, and there's nothing to choose among any of them, is it completely arbitrary to say we'll just pick them by any third, whoever's third on a list? I don't think it is. And if there's no economic justification, if they just feel like it because they're grumpy. Right. That's okay? They can just fire somebody because they're grumpy, and that doesn't count. It does seem to count under your theory. I would have some difficulty with that being constitutional, that a manager in state government or a manager in local government is grumpy and decides I'm going to terminate every third person. Yeah, it seems to me that that's... The initial decision to lay off a third of the force would be what would be arbitrary in that case, right? I would think so. Does it matter what kind of arbitrariness? Does it have to be any invidious or any directed animus, or can it just be pure arbitrariness? The way the Ninth Circuit interprets Class of 1 at present, my understanding is that you can meet the test by showing different treatment, similarly situated, and no rational basis for the difference in treatment or invidious conduct. All right. Now, getting down to this case, what was your showing of similarly situated? The showing of similarly situated was that these individuals developed an invidious plan to get rid of two people. My client was one of the two people, and they took a series of actions designed to get rid of my client, and they did. It's almost like saying I don't have to show anybody else the similarly situated. I don't think that that's true. I think that when you have direct evidence, and we did, of a plan to get rid of something, that is different treatment. An invidious, personally motivated plan, that is different treatment. Well, that gets back to the question. Yeah, it does. You're saying that it doesn't have to be a group of people who have done the same thing, that the other group you're talking about is everybody else in the workforce. I'm talking about... Which brings you to the point where any arbitrary action against an individual becomes an equal protection violation. I don't think that that's necessarily true. I think that there will, as the case law evolves, in my sense, be some kind of interpretations of different treatment, what constitutes different treatment. You mean something different than de minimis? Probably. Something beyond that? Probably. I mean, if the arbitrary treatment is Jane got new pens and I didn't. Can you give us a principle on which that distinction could be based? I believe that the principle that applies is the same principle that applies to suspect classes. When you look historically at the development of equal protection analysis, there isn't anything in the Constitution which, by word, prohibits sex discrimination or race discrimination. Rather, the Court has said that suspect classes infer invidious discrimination, which is unconstitutional. Your rule, it seems to me, that you're suggesting, is that just as you're investigating licensees and administering a licensing system and you treat one licensee different from all other licensees, that's equal protection. You're saying that in the workforce, government employees, if you treat one employee differently from all the other members of the workforce, that's the same as in the licensee situation. That's an equal protection violation. Which is the same, in the end, as saying if you treat any employee arbitrarily, there's going to be an equal protection violation. Now, another question is how arbitrary does it have to be? And one rule could be that it has to be some kind of hostility, invidiousness, animus. But you say that is not a requirement. But that is a possible. That's a possible. Under the current Ninth Circuit case law, that's what the cases hold. I'm not sure that any of that makes much difference in this case because Judge Ashmanskas gave the most severe instruction to the jury in terms of what we were required to prove. He required us to prove that my client was treated differently from similarly situated individuals, number one. He required my client to prove that there was no rational basis for the different treatment. And he required my client to prove, in addition, that the different treatment was arbitrary, malicious, or vindictive. In the Ninth Circuit, and — Or arbitrary. And. Oh, I'm sorry. No rational basis and arbitrary, malicious, or vindictive. So it could have been arbitrary. It didn't have to be malicious or vindictive. It did not have to be malicious and vindictive. However, in the Ninth Circuit, proof either that no rational basis or arbitrary, malicious, or vindictive would suffice for proof. And that is the most restrictive test used in any circuit in the country, the one that was given to the jury in this case. So we have a finding by the jury. Well, I think it could have been a harsher test than that. I mean, your opponent suggests a test where if there could have been a reason, even though there wasn't, that goes even beyond this. So it's not as harsh as it could be. Correct. But, you know, I might add that if that's ultimately the way the law evolves, then what we have done is essentially provide a safe haven for equal protection violations. Well, if you define them as such, yes. I mean, that's sort of circular. Well, I think that if there is any possible rationalization that could be thought of is really the circular thing because you have to accept that vindictive conduct by a State officer is not unconstitutional to accept that as the test. And it — Well, there are really three basic possibilities. One is if you don't apply this kind of a concept in government employment. And if you get the test to be strict enough, that's where you end up. Correct. Another is that you say, well, any arbitrary act by a supervisor toward a government employee is a constitutional violation. That's the other. And the middle is this rule of singling out and treating differently from a comparable group of employees. And if you get into that area, then the first question is, can the comparable group be all other employees, or does it have to be a group of ten employees who are in the same particular position as this employee? And that's a basic problem. And another basic issue there is, is it enough just to be treated differently without any real reason, or does there have to be an animus, which could be, again, within that middle test, you could have an equal protection category where, one, it has to be a comparatively small group who have identical characteristics, and in addition, it has to have animus. That would limit it considerably. And your opponent suggests, as I said, limit it even more if you say, could the government have had any reason, even if it didn't actually have it? And let me respond to that, Judge, because with respect to the similarly situated individuals, the appropriate way to cast the similarly situated individuals in a situation where a plaintiff did nothing and was singled out is to look at the individuals that the defendants interacted with in the workplace. It's not everybody, but it is a discrete group of individuals that they regularly interact with on the workplace on a regular basis. In this case, 30 individuals. Two were focused on. My client and Norma Korestan, 28 were not. Direct evidence of a plot to get rid of those two. No evidence that they ever developed a plot to get rid of anyone else. Different treatment. Let me also respond to the issue of whether you need to prove it's arbitrary or prove it is, and in addition, prove personal spite. Not raised in this case. Defendant could have sought a jury instruction raising that issue, could have raised it with the district court, but it wasn't raised in the lower court. From a practical standpoint, in this case, proof of a plan to get rid of the plaintiff and her supervisor, which the defendant concedes the jury could have found, would be sufficient to show spite, ill will. Now, on that score now, you talked about this plan to get rid of those two persons. We'll say it's arbitrary, but that means, going back to Judge Graber's earlier question, it really does away with at-will employment, doesn't it? I don't think that it does. In other words, you know, a government can't, employer can't fire somebody arbitrarily. It has to have a good reason. Is that right? In the context of this workforce. There is no longer at-will employment, even though that's, say, the status of the employee under state law. Is that right? In other words, every governmental employer's action is subject to a constitutional test. Again, I don't think you reached the question. In this workforce, these were not at-will employees. They could not be terminated for any reason or no reason at all. In other words, some reason had to be given? Correct. And what reason was given for your client? For my client, the reason was reorganization. Well, that brings up the very, perhaps even more sort of general policy question, but also potentially related to our legal analysis as well. In the absence of a constitutional claim for equal protection, a person in your client's position has claims for violation of contract, has tort claims, which she succeeded on and are not challenged here. All of her compensatory damages were granted under her tort theories as well. So this is going to sound harsh, but other than attorney fees, what is the reason why one would need to go into the constitutional realm here as distinct from simply saying she has remedies under contract and tort theories? Once again, issue not raised in the lower court. And as a practical matter. Well, I'm raising it because it may bear. It may bear on whether we're trying to fit a round peg in a square hole here unnecessarily. In other words, if every employee who's been treated this badly has available contract and tort claims, why are we agonizing to put this in the category of constitutional claims? Well, the reason that we're agonizing to put it in the arena of constitutional claims is there is Supreme Court jurisprudence that says that's where it belongs. Not in this context. Not in this context, but anyway. Is there anything other than attorney fees that cannot be obtained through the other claims, the common law claims? In this case, the jury made different awards of compensatory damages and different awards of punitive damages on the various claims. I thought the compensatories were the same, but I'll go back and look. I believe that they were different, but the jury in the way the verdict form was framed, if the damages in one claim was included in another, then the jury could mark that off. I believe that for the economic and non-economic, the figures were different, but the intentional interference damages were subsumed within the classic one. And it's also your claim that you probably would have recovered additional damages if you could have gotten in this other evidence, right? I'm sorry, I didn't hear that, Judge. If you could have gotten in this other evidence about what happened at the other employee's trial. Yes. Well, there are. I mean, that affected the state law claim, right? That affected the. . . What are the state law claims? There was a race and sex discrimination claim under, I believe it was Title VII in Equal Protection. If we're going to give you a couple of minutes, I guess we could. We've got a lot on the cross field. We'd better stop now. I will stop now. Thank you, Judge. We haven't even gotten to the punitive damages. All right, we'll give you five minutes. Thank you, Your Honor. First of all, Your Honor, I'd like to address the issue of arbitrariness. Constitutionalizing the concept of arbitrariness would not only be an overextension of the Olick case, but would, in fact, eviscerate at-will employment, which this Court certainly can do, but is currently the law in, I would estimate, over 40 states with respect to some public sectors. Well, generally, you know, the government's not supposed to act in an arbitrary manner, and it is a violation if you have a right. It's a violation if the government deprives you of a right arbitrarily to do so. But maybe the problem is that there isn't that kind of a right. The problem in this case, Judge Reinhart, is that the plaintiff, by seeking to extend the concept of Class of 1, Theory of Equal Protection, is trying to constitutionalize arbitrariness itself. We're not in a situation where the plaintiff is saying, I have this right, and you're depriving me of this right arbitrarily. The plaintiff is saying the arbitrariness itself is entitled to constitutional equal protection treatment. That's the plaintiff's argument, and that's why the Class of 1, Theory should not be applied in this setting. Getting back to the issue of similarly situated individuals, in the Thornton case, this circuit stated that in applying the Class of 1, Theory of Equal Protection, the plaintiff cannot simply conflate all persons that were not injured into a preferred class of persons that received better treatment than the plaintiff. But that's exactly what the plaintiff did in this case. The verdict form in this case focused, in its question, on was the plaintiff discriminated against by being treated differently from similarly situated persons without any rational basis and for arbitrary, vindictive, or malicious reasons. And it focused on three adverse employment actions, the ones we've been discussing, the promotion, the layoff, and the exercise of bumping rights. Those were the questions that were before the jury. But there was no evidence presented by the plaintiff as to how this plaintiff was treated differently from others similarly situated with respect to those adverse employment actions that the jury was asked to make a judgment about. And I agree with Judge Reinhart that it's difficult to do that in this type of setting. But that's the reason why in these types of cases where the public sector, in its role as employer, is necessarily making distinctions. That's why the class of one theory should not be applied in this setting. Instead, what the plaintiff did was said that I don't have to show that because I have shown animus. Animus may be the reason for the different treatment, but it can't be the different treatment itself. It can't be the different treatment itself. And that is how the plaintiff conflated the analysis that it should have gone through based upon this circuit's Thornton v. City of St. Helens case. This is a case in which the plaintiff lost with respect to an equal protection claim on the basis of race and lost on an equal protection case on the basis of sex or gender. Beyond everything else, the very fact that this Court, with all due respect, is considering what test to apply to this amorphous doctrine is evidence in and of itself that the law in this area is not clearly established. A public employee in the year 2001 facing this type of situation in the employment arena would be looking at a whole tapestry of law that says that if it's at-will employment, then they can take action for any reason, and if it's not, and the plaintiff in this case was not at-will employed, she was unionized, but that there were regulations to go through, but they would not have thought that the Constitution protected arbitrariness itself. This Court is discussing what test will apply today in the year 2001. There simply can be no doubt that the law was not clearly established. And under the Saussure v. Katz test. Do you agree that the damages are applicable to all claims, the same damages apply to all? My recollection, Your Honor, is that the damages are different with respect to different claims. I guess I was having some difficulty parsing that as well. Apparently, I misunderstood it. Well, the verdict says if the damages on this claim and on any other claim, if you do it on more than one claim, if you do it on claim A and on another claim, indicate whether any of the damages on this claim are unique to this claim. And never did they say yes to that. It seems to say that the damages on each claim apply to each other claim, and I think that's the way the district judge is. Your Honor, my recollection is, and Mr. Bruchetto can correct me if I'm wrong, that with respect to the punitive damages, the jury left that blank, and we asked the jury when the jury came back. No, no. We're talking about compensatory damages. Compensatory damages. That's my confusion, too. The substantive due process damages would be subsumed into the class of one-third of equal protection damages, if that answers your question. And vice versa? If we, if this Court were to do nothing with the class of one-third of equal protection and were to reverse the substantive due process claim, as we urged it should, there would be no reduction in the overall damages. But both of them, vice versa, supposedly upheld the substantive due process claim and reversed or didn't reach the class of one claim. It would affect it as well, Your Honor. The substantive due process is a much smaller dollar amount, but it would each be affected, I think. All right. Thank you. Thank you, Your Honor. There has been no argument relating to the cross-appeal. I'm certainly happy to answer any questions, but other than that I think I'm kind of limited in what I can do. Thank you. All right. Thank you both very much, counsel. Case disargued will be submitted. Very interesting.  Thank you.
judges: Reinhardt, Tashima, Graber